GARRETT PAYNE and THE ESTATE OF PEGGY PAYNE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Payne v. Commissioner
Docket No. 18756-80.
United States Tax Court
T.C. Memo 1982-190; 1982 Tax Ct. Memo LEXIS 553; 43 T.C.M. (CCH) 1051; T.C.M. (RIA) 82190; April 13, 1982. Garrett Payne, pro se. John L. Hopkins, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1977 and 1978 in the amounts of $ 720 and $ 1,041, respectively. The issue for decision is whether petitioner is entitled to deduct $ 3,698.80 in 1977 and $ 3,533.05 in 1978 spent in traveling from his home to the construction site where he worked and in 1978 for meals and lodging near that site as ordinary and necessary business expenses. [1]
*554 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Garrett Payne (petitioner) and his wife, Peggy Payne, now deceased, filed a joint Federal income tax return for the calendar years 1977 and 1978 with the Director, Internal Revenue Service Center, Memphis, Tennessee. At the time of the filing of the petition in this case, petitioner resided in Knoxville, Tennessee. Petitioner first became employed by the Tennessee Valley Authority (TVA) as a sheet metal worker at the Watts Bar Nuclear Plant on May 9, 1973. He worked at the Watts Bar plant site for two months in 1973, and from February 27 until May 22 and from September 3 until two weeks after the end of 1974. During this time, he was working on temporary buildings since construction of the plant had not begun. He worked on the plant from March 6, 1975, until January 30, 1976. Petitioner sustained an injury on March 3, 1975, but did not stop work. He was medically restricted against lifting, pushing or pulling with his right arm. Petitioner was awarded compensation for disability due to partial loss of use of his right arm for the period July 15, 1976, through February 18, 1977. On March 10, 1977, petitioner *555 received medical approval to return to work. On March 10, he applied to return to work as of March 11, 1977. On March 10, 1977, he signed, as he had in connection with some of his prior employments by the TVA, a document, TVA Form 9880A, entitled "Appointment Affidavit and Conditions." Among the statements contained in the document he signed on March 10, 1977, was the following: "Trades and labor temporary construction hourly, not to extend past: 78 02 22." Petitioner was affiliated with the Sheetmetal Workers Local 51, Knoxville, Tennessee. The local union having jurisdiction over the sheet metal workers at the Watts Bar Nuclear Plant was Sheetmetal Workers Local 51, Chattanooga, Tennessee. The TVA had an agreement with Sheetmetal Workers Local 51, Chattanooga, Tennessee, with respect to supplying sheet metal workers at its project at the Watts Bar Nuclear Plant. The Chattanooga Local 51 was unable to supply all the individuals needed for work on the Watts Bar Nuclear Plant and had an agreement with Local 51 in Knoxville to also supply sheet metal workers for that project. Petitioner, as a member of Local 51 Knoxville, received his assignment to work for TVA at the Watts Bar *556 Nuclear Plant through the union agent of that Local. Work on the Watts Bar Nuclear Plant was begun in 1975 and it was expected that it would require 8 years or more to complete the plant. The Watts Bar Nuclear Plant was approximately 80 miles from Knoxville, Tennessee, and was approximately 70 miles from petitioner's residence in Knoxville. During the late 1970's and until sometime in 1980, the Watts Bar Nuclear Plant was at a construction stage that required a great number of sheet metal workers, steam fitters, and electricians and qualified individuals in those trades in the area of the Watts Bar Nuclear Plant were in short supply. Even though sheet metal workers were in short supply in the area of the Watts Bar Nuclear Plant and other nuclear plants which were under construction at that time by the TVA, it was the policy of the TVA to employ all hourly construction workers on a temporary basis. For some time prior to 1978 and up to approximately October 1978 when the provision was deleted from the "Appointment Affidavit and Conditions" signed by hourly workers, TVA placed a date of 11 months and some odd days not to exceed 29 from the date of employment as the termination *557 date of all hourly construction workers. These hourly construction workers were hired as temporary workers so that they could be dropped immediately from the TVA roles if necessary. TVA is an agency of the United States Government and at times was required by the Office of Management and Budget or a presidential directive to comply with certain employment ceilings. During the time the provision for termination of a temporary employee at the end of 11 months and 29 days was contained in the "Appointment Affidavit and Conditions," officials of TVA were of the view that this provision further aided in quick termination of hourly construction employees if such quick termination were necessary. While this provision was in the appointment conditions, the temporary workers would be terminated at the stated termination date for a period usually of approximately 10 workdays and after that brief termination period generally would be reemployed. In certain trades the chances of reemployment were well over 90 percent and for sheet metal workers the chances of being reemployed were approximately 80 percent. When the 10-day furlough began, the employee at times would be told that he would very *558 likely be needed and be reemployed after the 10-day break. Petitioner worked at the Watts Bar plant site from March 11, 1977, until February 22, 1978. On March 13, 1978, he signed an "Appointment Affidavit and Conditions" which showed a termination date of February 23, 1979. However, petitioner was not terminated at that time because TVA had deleted the termination provision from the employment agreement in October 1978 and petitioner has worked at the construction site of the Watts Bar Nuclear Plant continuously from March 13, 1978, until the time of the trial of this case. When petitioner worked at the Watts Bar Nuclear Plant site in 1973 and 1974 on temporary buildings, he knew the approximate length of time before each building would be completed and his various periods of employment were approximately the length of time he had anticipated. When he began working on the plant in 1975, he did not know how long he would be employed at that plant. He had lived in the Knoxville area since 1941. His wife had a cardiac arrest in 1974 and their family doctor told her she should not move to the area near the Watts Bar Nuclear Plant because there were no adequate hospital facilities *559 nearby. Mrs. Payne died in May 1980 and shortly thereafter petitioner began living in a trailer and later in an apartment near the Watts Bar Nuclear Plant site, although he still considered Knoxville his home and kept his house there. Since in 1977 petitioner, except for short breaks, had worked at the Watts Bar plant site from March of 1975, he was hoping to be employed there until the plant was completed. Petitioner generally drove from his home in Knoxville, Tennessee, to the Watts Bar Nuclear Plant site each morning and drove home each evening. During 1978 he occasionally stayed overnight near the plant site. Petitioner on his Federal income tax return for the year 1977 deducted $ 3,698.80 as automobile employee business expenses and on his 1978 return deducted $ 3,533.05 as employee business expenses composed of $ 986.45 of meals and lodging and $ 2,546.60 as automobile expenses. Respondent in his notice of deficiency disallowed these claimed deductions with the following explanation: It is held that, since the termination of your employment at this job site could not be foreseen within a fixed and reasonably short period, the employment was indefinite, rather than *560 temporary, and any travel expenses incurred in connection therewith were nondeductible personal expenses rather than ordinary and necessary business expenses. * * * OPINION Section 162(a)(2) [2] provides for a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business including traveling expenses while away from home in pursuit of a trade or business. Generally speaking, a taxpayer's home, for the purpose of determining whether he is away from home in pursuit of a trade or business within the meaning of section 162(a), is considered to be his principal place of employment. . However, when a taxpayer's employment at some location is temporary as distinguished from indefinite or indeterminate, he is considered while so employed to be away from home in pursuit of his trade or business. ; ; *561 As we have pointed out on a number of occasions, employment is considered to be temporary where it can be expected to last only for a short period of time. ; . It is clear that petitioner in this case viewed all of his work as temporary since from the very nature of the construction business his employment at any particular site would cease when the construction work at that site was completed. However, this is not the definition of "temporary" that this Court has used in determining whether an individual is entitled to deduct traveling expenses while away from home under section 162(a)(2). . Petitioner testified that he did not know how long he would work at the Watts Bar Nuclear Plant in 1974 and 1975 when work on the plant was first begun but that by 1977 he hoped to remain employed at the Watts Bar plant until it was completed. In 1977 petitioner was aware that he would not likely be terminated for more than 10 days at the end of a year from the commencement of his 1977 employment in March *562 1977. The record shows that TVA had need for workers at the Watts Bar Nuclear Plant on a steady basis and this fact was known to petitioner. Also, the fact that construction on the plant would be expected to extend 5 or 6 years after 1977 was generally known. The fact that petitioner was working in the territorial jurisdiction of the Chattanooga Local of the union does not cause his work to be temporary. Petitioner himself recognized this fact. In any event, we have held that where skilled workers in a taxpayer's craft were in short supply in a certain area so that workers from another area were sent in to work there on a basis stated to be "temporary," this fact did not cause the taxpayer's work to be temporary rather than indefinite for the purposes of section 162(a). . Nor has the fact of temporary layoffs interrupting otherwise continuous employment of a construction worker at a particular site been considered to necessarily cause the taxpayer's employment to be temporary rather than indefinite. . Considering the facts in this case against *563 the background of our holdings in other cases, we conclude that petitioner's employment at the Watts Bar Nuclear Plant site in 1977 and 1978 was not temporary but was indefinite. The record shows that workers in petitioner's craft were in short supply. The termination agreement that was put in petitioner's employment agreement in 1977 did not mean that petitioner's work at Watts Bar Nuclear Plant would in fact be terminated except for a 10-day period. The record shows that the chances of petitioner not being terminated but merely furloughed for 10 days were over 80 percent. Since petitioner had been employed by TVA since 1973, his chances of reemployment after the 10-day break were much greater than 80 percent. Petitioner's primary position in this case is that because of his wife's illness he could not move her to an isolated area such as the area near the Watts Bar plant site. This is a personal reason for living in Knoxville not required by the exigencies of petitioner's business. See . On the basis of this record, we conclude that petitioner is not entitled to deduct the expenses of driving his automobile *564 from his home in Knoxville to his work at the Watts Bar Nuclear Plant during the years 1977 and 1978 and the costs of meals and lodging near the Watts Bar plant site in 1978 since he was not away from home in the pursuit of a trade or business within the meaning of section 162(a)(2). Decision will be entered for the respondent.
Footnotes
1. Respondent's counsel at the trial and on brief stated that the only issue before the Court was whether petitioner's employment during the years 1977 and 1978 was temporary or indefinite. Respondent's counsel specifically agreed that if the Court concluded that petitioner's employment in the years 1977 and 1978 was temporary, petitioner should be entitled to the deductions he claimed even though this Court has held that expenses of driving to and from work are non-deductible commuting expenses whether or not the taxpayer's employment was temporary. See the discussion in .↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩